Good morning. May it please the court, my name is Jia Kim, appearing on behalf of Appellant Frederick Bendtzen. I'll be focusing on the sentencing guidelines dangerous weapon interpretation issue this morning. Contrary to the district court's conclusion in this case, when it comes to fake weapons and the dangerous weapons enhancements to the robbery guideline, it's not only conduct that matters. In fact, once a fake weapon is possessed, conduct doesn't matter at all. Although the robbery guideline is currently written is ambiguous on this point, the history of the amendments to the commentary to the robbery guideline show that what the Sentencing Commission intended was to cap the enhancement for use of a fake weapon at three levels, the brandished or possessed enhancement, rather than allowing that use of a fake weapon to garner the four-level otherwise used enhancement, regardless of what is done with the fake weapon once you're inside of the bank. Now, is this an issue of first impression in our circuit? This is, yes. So here, even after applying the traditional rules of statutory construction, which do apply to the guidelines, the robbery guidelines dangerous weapons enhancements are, at a minimum, ambiguous. Two cardinal rules of statutory construction are important here. First is the principle that you have to look at the guideline and the relevant commentary holistically and not in isolation. So in this case, you can't simply look to the otherwise used enhancement in subsection B2D, decide it applies based on application note one, and stop there as the government would ask this court to do. The government's reading would have this court ignore application note two and the ambiguity it creates altogether. Rather, when going about choosing or deciding which enhancements apply, the sentencing court needs to look at all the possible enhancements based on the conduct and proceed from there. So in this case, the options appear to be the two-level enhancement for threat of death, the three-level enhancement for brandishing or possessing a dangerous weapon, and the four-level enhancement for otherwise using a dangerous weapon. This inquiry also requires the court to consider the authoritative and binding guidelines commentary. The second principle which comes into play here is the rule that you should strive, the court should strive to avoid an interpretation that would render a part of the guideline or the application notes purely surplusage or redundant. And again, the government's reading would make application note here wholly redundant to application note one. Were those redundant though in the 1998 version as well? There is, I admit, an element of redundancy in the 1998 version. However, it didn't create an inconsistency between what application notes one and two were saying. Application note one notes that certain terms, including dangerous weapon, are defined in 1B1.1's commentary, which sets forth certain general definitions that apply unless otherwise expressly modified. Application note two says, does point back to the same definition here, and it says consistent with the commentary to guideline 1B1.1, but it says specific to subsection B2E, the lesser three-level enhancement. So the ambiguity arises in the fact that application note two is strangely specific to the lesser enhancement. It's silent on whether it applies to the greater enhancement. Is there an inconsistency or is it just that the guidelines tells us in many different ways that dangerous weapon includes a phony weapon that appears to be a dangerous weapon? Is there any inconsistency there or just a redundancy? There's a redundancy that creates an inconsistency once you apply the rule that we should interpret or try to interpret the guidelines in a way that the guideline becomes ambiguous because if we try to read application note two in some way as to give it independent meaning, which this Court's statutory construction cases have shown that we should, the specific reference to B2E, the three-level enhancement in application note two, seems to indicate it doesn't mention the greater enhancement. Well, let me just pursue that a little bit, though. There isn't any ambiguity in the language. The problem is that the application notes are redundant, right? And so you're arguing that because they're redundant, there must be an ambiguity and we must resolve that ambiguity in a way that favors the less severe application, correct? How hard and fast is that rule, though? We're looking at the guidelines as a whole. There was case law before the amendments that said the four-point enhancement applies. There's case law from another circuit after the amendments that says that the four-point enhancement applies. So why do we have to go the way you're going just because there's a redundancy? I don't think we have to immediately go from redundancy to ambiguity to rule of lenity. I think the intermediate step here is to look at the history of the amendments to the guideline to see if they shed any light on this issue, as the Court did in the Powell case. And it could have been the case that by looking at the history of amendments, it became clear that this was just a pure redundancy. There was never any specific connection between the lesser enhancement and the dangerous weapons that are fake, the use of those kinds of weapons. So I think we can't immediately jump to ambiguity and rule of lenity. But I guess just historically, thinking about this, under the old notes prior to the amendments, there was a case I think was from the 11th Circuit that said that the four-point enhancement applies to all fake weapons used in this particular way. And then the amendments don't change anything, really. They don't make things clearer in the direction that you argue they are clearer. I mean, just looking at the legislative history, they left things alone as far as the redundancy is concerned. I think the 11th Circuit case, Miller, that you're referring to, is both distinguishable and wrongly decided. It was wrongly decided because in the pre-2000 version of the amendments, of the common application notes, it specifically included this brandish displayed or possessed, which tracked exactly the language of the three-level enhancement at that point, displayed as later dropped as being redundant. And the 11th Circuit sort of disregarded that clear limiting language and went straight to imputing sort of their own view of relative degrees of culpability, saying that otherwise using, you must always garner a higher enhancement than brandishing, which is not the case. And my question is, from a historical standpoint, then why, what can we infer from the fact that the Sentencing Commission didn't clean that up? I don't think we can read too much into the failure to clean that issue up. You know, that amendment was clarified in response to other case law, you know, the toy gun, the hand in the towel cases. And, you know, the Sentencing Commission has in the past, you know, altered that commentary just to clarify it. I think also the 11th Circuit case, the defendant there had pled guilty to armed robbery, which requires as an element the use of a dangerous weapon or device, and robbery, unarmed robbery under 2113A and armed robbery under 2113D start off at the same, you know, base offense level. So it would be very difficult for the defendant in the 11th Circuit case to say, I pled guilty to armed robbery, but you can't give me any sort of dangerous weapon enhancement in that case. Here, Mr. Benson pled guilty to unarmed robbery. The only factual basis for his plea involved the use of the note, did not mention the use of this fake bomb at all, and the parties were free to argue that at sentencing. Similarly, in the Wilson case, the 3rd Circuit case, after the guidelines were amended, the defendant in that case had conceded the central point here, saying that, okay, yes, for whatever reason, I concede that the fake bomb, there's also I think a toy gun in that case, were dangerous weapons. And the 3rd Circuit said that appeared to be proper, but they didn't really get into that issue seriously. I see I'm about to run out of time, so. All right. Does anyone have any other questions? Well, thank you very much, Ms. Kim, and we'll hear from Mr. Liu on behalf of the government. Good morning, Your Honors, and may it please the Court. Chris Liu on behalf of the United States. And with respect to the application of the guideline factors, first, I think you need to look at the guideline factors. First of all, I think you need to look at the fact that the defendant had a simulated bomb into the bank, put it on the counter of the teller window, handed the teller a note threatening to explode the bomb, made gestures as if he had a detonator in his hand. He made those gestures both before and after getting the money from the teller. He made gestures as he was exiting the bank. And after the robbery, the police evacuated the bank. They X-rayed this device, which they characterized in their reports afterwards as being very realistic, to see if it was a real bomb. And when they couldn't tell if it was real, they had to use a robot to disable the device. And doing that required several hours. It affected a commercial block, a whole commercial block in the area, including the only full-service trauma center hospital within a one-hour radius of Santa Barbara. And so this is a case where more was done with the device than simply a brandishment. This is the paradigm case where there is something more. There is an otherwise used. It's not just a brandishment. There were acts done to suggest that the defendant was going to detonate this device. And based upon these facts, the district court properly imposed a four-level enhancement for otherwise using a four-level enhancement. So the defense's argument, or I guess now perhaps the defense will admit, the guideline itself, the definition of dangerous weapon on its face is not ambiguous. It's unambiguous. And there's nothing in the language of the applicable guidelines. And there's nothing in the commentary to suggest that any other definition of dangerous weapon can be used with respect to the four-level enhancement under this section of the guidelines. So the defense is arguing, basically, that this guideline becomes ambiguous in light of the amendments. And because the amendment on its face is unambiguous, I don't think it's necessary for the court to delve into the history of the amendments. But even if the court does do that, the defense is still wrong. The gist of the defense's argument is that there is an implied desire by the sentencing commission to exclude simulated weapons from the ambit of the four-level enhancement. But there's no basis for that in the guidelines. And there's no basis for that in the sentencing commission's explanation of the amendment in the text of Amendment 601 itself. Amendment 601 itself states in the commission's explanation that the reason for the amendment is to clarify under what circumstances an object that is not dangerous should be treated as one for purposes of guideline application. And despite that statement of intent to clarify the guidelines with regard to simulated weapons, the defense is arguing that the sentencing commission intends for dangerous weapons to mean one thing for purposes of the four-level enhancement under the robbery guideline, and to mean something else everywhere else in the guidelines, everywhere else that the definition of dangerous weapons is applied. And there are no other guidelines other than the robbery guideline that incorporate by reference this definition of dangerous weapons. Now, there's nothing in the text of the guidelines. There's nothing in the amendments that suggests that this is the case. So if we're to look at this holistically, the guidelines holistically, as the defense suggests, it's the government's interpretation that is consistent with the sentencing guidelines as a whole, because it allows the same definition to have the same effect throughout the guidelines, without arguing that there's some implicit intent to change the definition this one place in this one guideline. And unless there are any further questions, questions from the Court, I would submit. I just have a question. If the argument by the defense were correct, if the argument by the defense were correct, what's your opinion of the state of the record with regard to the need to remand the case? In other words, the judge considered the guidelines and then explicitly imposed a 3553 sentence. If we accepted the argument that it's a three-point rather than a four-point enhancement, do you have a view of the adequacy of the record to affirm the sentence under 3553? Your Honor, if the Court were to find that there was a substantive, that there was an error in the Court's calculation of the guideline factors, I think it would be necessary to remand. We can't. It's not clear from anything the district judge said that the 80-month sentence would have been the outcome but for? During the sentencing, the Court did note that the sentence that it was going to impose was in fact below the guideline range that corresponded to the defense's own conceded position in terms of the offense level. But the district court didn't go the additional step of saying the Court would impose that sentence either way. Okay. Was it below the guideline range that would have been appropriate had a three-level enhancement been used instead of the four-level enhancement? Yes, Your Honor. It was actually, I believe, two months below what would have been the corresponding range. The government's position was that it was an offense level of 23, and the defense conceded that it could be, the defense conceded that a level 22 would be within the guideline range if an offense level 22 was found, would have been 84 months, which is four months higher than the actual sentence that was imposed. But again, the district court did not specifically state that it would have imposed the same sentence either way. All right. Thank you, counsel. Thank you, Your Honor.
judges: Wardlaw, Ikuta, Fogel